## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-06-00264-HE |
| | ) | |
| RUSTY R.. THERRIEN, and | ) | |
| TERESA THERRIEN, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RUSTY AND TERESA THERRIEN'S
## SENTENCING MEMORANDUM & MITIGATION[1]

### I.   OPENING COMMENTS

As defense attorneys, it is counsel's duty in preparing for sentencing not only to provide

assistance to the Court and the United States Probation Office during the Pre-Sentence Investigation,

but also to present a personal perspective on the defendant for the purpose of mitigating a sentence.

The contents of this combined sentencing mitigation memorandum and request for a variance or

deviation[2] from the U.S. Sentencing Guidelines are not meant to duplicate the Pre-Sentence Report

and investigation but are meant to supplement it in a manner that will be consistent with the Court's

need in obtaining a complete perspective on the defendant prior to imposing sentence, pursuant to

Rule 32 of the Federal Rules of Criminal Procedure, Local Rule 42, 18 U.S.C. § 3661.

---

[1] In an effort to preserve judicial economy, we are combining the sentencing memoranda of Rusty and Teresa Therrien into one document, with one accompanying index.

[2] To the extent the Defendants cite cases in support of mitigating factors, we reply upon *Rita v. United States*, 2007 WL 1772146, 127 S.Ct. 2456 (June 21, 2007) (departures are part of guidelines sentencing scheme). Notwithstanding the advisory nature of the Guidelines, we submit that the Court may deviate or vary from the proposed punishment calculated by the U.S. Sentencing Guidelines.

Title 18 U.S.C. § 3661 provides, "No limitation shall be placed upon the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

> Legislative history of the Sentencing Reform Act of 1984 reflects that it was not Congress's aim to straight jacket a sentencing court, compelling it to impose sentences like a robot inside a sentencing guidelines' glass bubble, and preventing it from exercising discretion, flexibility, or independent judgment. The sentencing judge has an obligation to consider all the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case. The purpose of the U.S. Sentencing Guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence for an individual offender, not to eliminate the thoughtful imposition of individualized sentences. (emphasis added.)

*See* 13 CRIM. JUST. 51 (Spring 1998)(citing S.Rep. No. 225, 98th Cong., 2d Sess. 52 (1984), reprinted at 1994 U.S.C.C.A.N. 3182, 3235). Other statutory sections also give the district court direction in sentencing.

The results of our investigation for purposes of sentencing have revealed several important mitigating factors we wish the Court to consider in its decision as to the appropriate sentences for Rusty and Teresa Therrien. These factors include:

## A.   RUSTY THERRIEN

1.   Rusty Real Therrien is blue-collar, 34-year-old father of one who stands before the Court after being found guilty by a jury of three counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Counts 5, 7 and 10 of the Indictment), and three counts of money laundering in violation of 18 U.S.C. §§ 1957 and 2 (Counts 6, 9 and 11 of the Indictment).

2.   Rusty Therrien is not now and never has been a threat to the community nor a danger to society.  We submit it is fair to state that the federal authorities do not believe that Mr. Rusty

2

Therrien poses a threat to himself or the general community because Assistant United States Attorney, Susan Dickerson Cox, announced the same in open court, and Mr. Therrien has remained free on bond pending sentencing. The defendant's adjustment to bond supervision has been satisfactory. There have been no bond violations noted against Mr. Therrien.

3.     Rusty Therrien is the father of one child,  Rhaeley Therrien, age 3.

4.     Rusty Therrien is a first-time offender.

5.     He is not a violent person and harbors no ill feelings toward those involved in his prosecution.

6.     Rusty Therrien is cognizant of the seriousness of the offenses for which he stands convicted.

7.     Rusty Therrien is a responsible and productive member of society with outstanding attributes of hard work, determination and family values. The letters accompanying this memo reflect the kind of person that Rusty truly is.

8.     Rusty Therrien has expressed to counsel and his family and friends **genuine remorse** and **shame** for his actions and inactions that lead to he and his wife's current convictions. Mr. Therrien would give anything if his wife hadn't been involved in the present situation, as he admires her trustworthiness and capabilities as a mother.

9.     Rusty Therrien has a very supportive family including his parents, aunts, and cousins, and all are willing to do whatever it takes to support Rusty and Teresa through this difficult time. All of his family have expressed love and support and have observed first-hand his remorse for causing Teresa and the children so much pain. Accordingly, Rusty and Teresa Therrien have a waiting, positive support system.

3

**B.   TERESA THERRIEN**

1.   Teresa Marie Therrien is a 33 year-old mother of four who stands before the Court after being found guilty by a jury of one count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Count 5 of the Indictment), and one count of money laundering in violation of 18 U.S.C. §§ 1957 and 2 (Count 6 of the Indictment).

2.   Teresa Therrien is not now and never has been a threat to the community nor a danger to society.  We submit it is fair to state that the federal authorities do not believe that Ms. Therrien poses a threat to herself or the general community because Assistant United States Attorney, Susan Dickerson Cox, announced the same in open court, and Ms. Therrien has remained free on bond pending sentencing. The defendant's adjustment to bond supervision has been satisfactory. There have been no bond violations noted against Ms. Therrien.

3.   Theresa Therrien is a mother of four children: Alexa Anlauf, age 17, Madelyn Anlauf, age 11, Lawrence Anlauf, age 8, and Rhaeley Therrien, age 3.  Ms. Therrien was the primary caretaker of all four children from birth until March, 2007, when Ms. Therrien's ex-husband sought and obtained an ex parte emergency change of custody citing Ms. Therrien's then upcoming federal criminal trial as the main reason for the emergency motion.  Outside of the pending criminal trial, all other allegations proved false and/or unwarranted.

4.   Teresa Therrien is a first-time offender.

5.   She is not a violent person and harbors no ill feelings toward those involved in her prosecution.

6.   Teresa Therrien is cognizant of the seriousness of the offenses for which she stands convicted.

4

7.    Teresa Therrien is a responsible and productive member of society with outstanding attributes of compassion, trustworthiness and forgiveness.  Many defendants have friends and associates that say generally good things about them.  Counsel has rarely seen so many individuals who truly know the defendant well, many over long periods of time who give such specific examples of her character, trust and capabilities as a mother.  Teresa Therrien is a wonderful mother.

8.    Teresa Therrien has expressed to counsel and her family and friends **genuine remorse** and **shame** for her actions and inactions that lead to her current convictions and the removal of her children.  Counsel has experienced very few clients who truly are that trusting of an individual.  Mrs. Therrien's greatest asset and fault has turned out to be her ability to trust people.

9.    Teresa Therrien has a very supportive family including her parents and in-laws, and all are willing to do whatever it takes to support Rusty and Teresa through this difficult time.  All of her family have expressed love and support and have observed first-hand her remorse for causing her children so much pain.  While Teresa is occasionally inconsolable over the loss of her children, she is seeking therapeutic treatment and fostering a good attitude toward accepting her punishment and working to get her children back home.  Accordingly, Teresa Therrien has a waiting, positive support system.

This memorandum is not intended to offer any excuses for Rusty and Teresa Therrien's conduct or to show cause for them to be given undue leniency.  Rather, the purpose of this memorandum is to identify additional mitigating factors for consideration when the Court determines their appropriate sentences.

## II. SENTENCING CONSIDERATIONS

Title 18 U.S.C. § 3553 provides for the imposition of sentence.  Section 3553 (a) provides

several factors to be considered by the court in imposing sentence:

> The court shall impose a sentence sufficient but not greater than
> necessary, to comply with the purposes set forth in paragraph two (2)
> of this subsection.  The court, in determining the particular sentence
> to be imposed shall consider –
>
> (1) the nature and circumstances of the offense and the history
> and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
> A.   To reflect the seriousness of the offense, to promote
> respect for the law, and to provide just punishment for the offense;
>
> B.   To afford adequate deterrence to criminal conduct;
>
> C.   To protect the public from further crimes of the defendant;
> and
>
> D.   To provide the defendant needed educational or vocational
> training, medical care, or other correctional treatment in the most
> effective manner.

See 18 U.S.C. §3553 (emphasis added).  See also USSG, Ch. 1, Part A (2) "The Statutory Mission."

Under Title 18, United States Code  § 3582, imposition of a term of imprisonment is subject to the

following limitation: in determining whether and to what extent imprisonment is appropriate based

on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an

appropriate means of promoting correction and rehabilitation."  Counsel for defendants Rusty and

Teresa Therrien respectfully request the Court to consider not only the Sentencing Guidelines but

also the statutory mission and the other relevant mitigating factors cited herein.

The U.S. Sentencing Commission expressly recognized 18 U.S.C. 3553 and concludes,

6

" . . . . [T]he Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.

The Commission has adopted this departure policy for two reasons. First, it is difficult to prescribe a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision. . . .

Second, the Commission believes that despite the courts'' legal freedom to depart from the guidelines, they will not do so very often. . . .

It is important to note that the guidelines refer to two different kinds of departure. The first involves instances in which the guidelines provide specific guidance for departure by analogy or by other numerical or non-numerical suggestions. The Commission intends such suggestions as policy guidance for the courts. The Commission expects that most departures will reflect the suggestions and that the courts of appeals may prove more likely to find departures "unreasonable" where they fall outside suggested levels.

A second type of departure will remain unguided. It may rest upon grounds referred to in Chapter Five, Part K (Departures) or on grounds not mentioned in the guidelines. While Chapter Five, Part K lists factors that the Commission believes may constitute grounds for departure, the list is not exhaustive. The Commission recognizes that there may be other grounds for departure that are not mentioned; it also believes there may be cases in which a departure outside suggested levels is warranted. . . .

USSG, Ch. 1, Part A (4)(b).

Respectfully, counsel prays that the Court consider Mrs. Therrien as a candidate for straight probation or, alternatively, for home confinement or a combination of incarceration and home confinement, and Mr. Therrien as a candidate for a variance from the sentencing guidelines based upon the mitigating factors cited herein. Council recognizes that probation and/or home confinement are not generally recommended under the United States Sentencing Guidelines and that if the Guidelines were still mandatory that Teresa Therrien's Level 15, Category I, would fall into a range

of punishment of 18 to 24 months.   This would place her in Zone D, which is not eligible for probation.   Notwithstanding the advisory Guidelines, counsel submits that this is a very unique circumstance and that the Court in its discretion may determine that probation or home confinement is appropriate for Mrs. Therrien as it is sufficient but not greater than necessary to satisfy the purposes of sentencing.  Further, as applied to Rusty Therrien, if the Guidelines were still mandatory, Rusty Therrien's Level 19, Category I, would fall into a range of punishment of 30 to 37 months. We present to the Court examples of mitigating factors that warrant strong consideration in Mr. Therrien's case.

Obviously, courts must take into consideration both rehabilitation and punishment when handing down a sentence. Respectfully, Teresa Therrien's punishment began **long before** any sentence this Court will impose. Mrs. Therrien's punishment began the day her ex-husband took emergency ex parte custody of her children.  Three of Mrs. Therrien's children, Alexa Anlauf, age 17, Madelyn Anlauf, age 11, and Lawrence Anlauf, age 8, were taken from her on the eve of this trial. Mrs. Therrien's ex-husband cited the impending criminal trial as grounds for taking emergency custody of the children.  Since that time, Mrs. Therrien has seen her children only sparingly, when she had been seeing them nearly every day since they were born. The punishment Mrs. Therrien has suffered over the custodial loss of her children is far greater punishment than anything this Court could impose.   While no final custody order has been issued, Mrs. Therrien fears that any incarceration, much less a lengthy incarceration, will only seal her fate regarding her chances of ever regaining custody of her children. As it stands now, they have been taken from the life that they knew and placed with a father that owes Mrs. Therrien approximately $60,000 in back due child support and repeatedly refused to support his children in the past. Finally, both Rusty and Teresa

8

Therrien face the fear of being separated from their three-year-old daughter, Rhaeley, and having her placed with relatives while they serve out their incarceration.

## III.   MITIGATING FACTORS FOR CONSIDERATION USSG §5K2.0

Although the U.S. Sentencing Guidelines are now advisory only, the United States Supreme Court case of *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), empowered federal judges to be creative in finding grounds for a downward departure. Effective November 1, 1994, the Sentencing Commission added a paragraph to the Commentary to USSG § 5K2.0 authorizing a downward departure based on a combination of factors:

> The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. (Emphasis added.)

However, even prior to the adoption of this amendment, several circuits had authorized downward departures based on a combination of factors, none of which standing alone would have justified a departure.[3] Since the amendment and post-*Koon*, the combination of factors downward departure or "variance" has been credited with approval. *See United States v. Rioux*, 97 F.3d 648 (2d Cir. 1996)(upholding downward departure based on physical condition and charitable acts). We ask the

---

[3] *See United States v. Browser*, 941 F.2d 1019, 1020-1025 (10th Cir. 1991)(upholding departure from career offender guideline on "unique combination of factors," none of which would have warranted departures by themselves); *United States v. Sklar*, 920 F.2d 107, 117 (1st Cir. 1990)(the convergence of factors that might be "inadequate to warrant departure when taken in insolation, may . . . in combination suffice to remove a case from the heartland . . .").

9

Court to consider the following mitigating factors in varying or departing downward from the advisory Guidelines to satisfy justice.[4]

After *Booker*, the fundamental consideration for the district court in sentencing is the directive of Congress that the district court "shall impose a sentence **sufficient, *but not greater than necessary*,** to comply with [the purposes of sentencing]" (emphasis added). 18 U.S.C. § 3553(a); *United States v. Ministro-Tapia* 470 F.3d 137 (2d Cir. 2006); *United States v. Yopp*, 453 F.3d 770, 773 (6th Cir. 2006) ("the twenty-four month sentence...is substantively plainly unreasonable because it is "greater than necessary to comply with the purposes set forth in [ § 3553(a)(2) ]" where only 12 months sentence necessary to assure treatment in 500 hour drug abuse program. **"Many times we have emphasized that a district court's mandate is to impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in [§3553(a)(2)(1)]"**). *United States v. Rodriguez-Rodriguez*, 441 F.3d 767 (9th Cir. 2006). This is the "primary directive" of the sentencing statute. *United States v. Santova*, 493 F.Supp.2d 1075 (E.D. Wisc. 2007) (the "so-called parsimony provision . . . requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant."); *see also*, *United States v. Ferguson*, 456 F.3d 660 (6th Cir. 2006) (The 'parsimony provision' [is the] guidepost for sentencing decisions post-*Booker*."); *United States v. Cull* 446 F.Supp.2d 961 (E.D. Wisc. 2006) ("This is the so-called parsimony provision, which requires the court to impose the least severe sentence necessary to satisfy the four purposes of sentencing – punishment , deterrence, protection of the public and rehabilitation."); *United States*

---

[4] Unless specifically noted, the factors are intended to apply to both Rusty and Teresa Therrien.

*v. Husein* 478 F.3d 318 (6th Cir. 2007) ("The plain import of *Booker* is that a 1-day, below-the-Guidelines sentence, no less than a 7,300-day, above-the-Guidelines sentence, is now a viable sentence for a district court to impose so long as it is authorized by statute and reasonable within the meaning of 18 U.S.C. § 3553(a)").

This directive to the district court is not to be confused with the test <u>on appeal</u> as to whether the district court's sentence is "reasonable." In *Rita v. United States*, 2007 WL 1772146, 127 S.Ct. 2456 (June 21, 2007), the Supreme Court held that the courts of appeal may presume that a guidelines sentence is reasonable, but stressed the presumption was "an **appellate** court presumption [that] applies only on appellate review" (emphasis in original). By contrast, "**the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.**" *Id.* (emphasis added); *United States v. Sachsenmaier*, 491 F.3d 680 (7th Cir. 2007) (post-*Rita*, "The district courts must calculate the advisory sentencing guidelines range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence."); *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006) ("a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task"); *United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006 ) ("a district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2). Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task").

11

**Because the guidelines are not binding, "courts need not justify a sentence outside of them by citing factors that take the case outside the 'heartland.'"** *United States v. Ranum,* 353 F.Supp.2d 984, 987 (E.D.Wis.,2005) (emphasis added); *United States v. Williams,* 435 F.3d 1350 (11th Cir. 2006) ("The district court's sentence [below the guidelines] does not have to be justified as a downward departure. After *Booker,* the sentencing Guidelines are advisory, and the sentencing court, in its own discretion, can move below the advisory Guidelines range without a motion for downward departure as long as the resulting sentence is reasonable"). Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." *United States v. Trujillo-Terrazas,* 405 F.3d 814, 819 (10th Cir.2005). Thus, "while the Guidelines still exert gravitational pull on all sentencing decisions ... district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." *Id.* Further, the sentencing factors set forth in § 3553(a), "which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion." *Id; United States v. Menyweather,* 431 F.3d 692, 700 (9th Cir. 2005)("In the 'broader appraisal,' available to district courts after *Booker,* courts can now ··· have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant,' such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities"); *United States v. Gorsuch,* 404 F.3d 543, 548 (1st Cir.2005)("in the post-*Booker* world, the sentencing guidelines are only advisory and the district court may justify a sentence below the guideline level based upon a broader appraisal"); *United States v. Castro-Suarez,* 425 F.3d 430, 436 (7th Cir. 2005) (a non-guideline sentence need not be supported by unusual circumstances, as a pre-*Booker* departure would; rather, all that is necessary "is an adequate

statement of the judge's reasons, consistent with § 3553(a), for thinking the sentence is appropriate for the particular defendant"); and *United States v. Santova*, 493 F.Supp.2d 1075 (E.D. Wisc. 2007) (district courts have "broad sentencing discretion . . . to impose non-guideline sentences by departing or applying § 3553(a).").

1. **THE ADVISORY GUIDELINE SENTENCE IS TOO HARSH OR IS "GREATER THAN NECESSARY."**

**"Our sentences are too long, our sentences are too severe, our sentences are too harsh... [and because there are so few pardons] there is no compassion in the system. There's no mercy in the system."** *See* Testimony Of Justice Anthony Kennedy before the Senate Judiciary Committee February 14, 2007 in response to Senator Whitehouse, video link accessible at Professor Berman's Sentencing Law and Policy Blog of Feb. 15, 2007); July 2, 2007 Statement of President Bush commuting Lewis "Scooter" Libby's 30-month sentence (available at http://www.whitehouse.gov/news/releases/2007/07/20070702-3.html) ("the [within guideline] prison sentence given to Mr. Libby is excessive. . . His wife and young children have suffered immensely."); ( July 9, 2006 Speech of Justice Anthony Kennedy at the Ninth Circuit Judicial Conference ("I think the guidelines are far too severe. . .,") (found at http://talkleft.com/new_archives/015288.html); *see also* August 9, 2003 Speech of Justice Kennedy at the ABA Annual Meeting (available at http://www.abanews.org/kencomm/amkspeech03.html) (**"Our resources are misspent, our punishments too severe; our sentences too long... the sentencing guidelines are responsible in part for the increased terms....[and they] should be revised downward"**); *United States v. Khan*, 325 F.Supp. 218, 227 (E.D.N.Y. 2004) (same); "The U.S. rate of incarceration is the highest in the world." Fact Sheet, National Council on Crime and Delinquency (November, 2006), found at

http://www.nccd-crc.org/nccd/pubs/2006nov_factsheet_incarceration.pdf; *United States v. Ranum,* 353 F.Supp.2d 984, 985 n.1  (E.D.Wis.2005) (quoting Justice Kennedy's statement that "our punishments [are] too severe, our sentences too long").

Specifically relevant here is the recognition that in some white collar cases, the punishments can be too harsh. *United States v. Adelson,* 441 F.Supp.2d 506 (S.D.N.Y. 2006) (in securities fraud case where guidelines call for life sentence, court imposes 42 months, noting that "where, as here, the calculations under the guidelines have so run amok that they are patently absurd on their face, a Court is forced to place greater reliance on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and of the human being who will bear the consequence).

2.  **EVEN THOUGH MITIGATING FACTOR DOES NOT QUALIFY FOR TRADITIONAL DOWNWARD DEPARTURE, OR THE DEFENSE IS PROHIBITED FROM SEEKING DEPARTURE, COURT MAY STILL USE FACTOR TO SENTENCE BELOW ADVISORY RANGE.**

While the Court may find that some of the bases for variance or departure set forth in this Sentencing Memorandum are not subject to consideration under the Guidelines, it should be noted that since the *Booker* decision, courts must recognize their discretion in determining the appropriate sentence. *United States v. Rita,* 127 S.Ct. 2456, 2465, 2007 WL 1772146 (June 21, 2007) (even when a traditional departure is not justified, non-guideline sentence can be appropriate "because the Guidelines sentence itself fails to properly reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless); *United States v. Menyweather,* 447 F.3d 625, 634 (9th Cir. 2006 )(in embezzlement of $500,000, downward departure of 8 levels not abuse because "In the 'broader appraisal,' available to district courts after *Booker,* courts can now ⋯ have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of

14

mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant'"); *United States v. Spigner*, 416 F.3d 708, 712 (8th Cir. 2005) (where defendant convicted of sales of more than 50 grams of crack, base level 34, and where defense agreed not to ask for downward departures on basis of health, 5H1.4, case remanded because district court can still impose a sentence lower than the suggested because after *Booker* the new advisory sentencing scheme permits broader considerations of sentencing implications. Moreover, section 3553(a) requires that a district court consider the need to provide medical care in the most effective manner when sentencing a defendant).

### 3.  CRIMINAL CONDUCT ATYPICAL AND OUTSIDE THE HEARTLAND OF THE GUIDELINE.

Rusty and Teresa Therrien are not the typical white collar criminal defendants being prosecuted for wire fraud and money laundering.  Teresa is highly uneducated and naive when it comes to business and financial affairs.  Further, she is not your typical "wheeler/dealer."  Teresa is a mother of four children that has devoted her life to raising her children.  Work has been a secondary priority in Teresa's life, as evident by the six times it took her to pass the cosmetology exam and the nine times it took her to pass the real estate exam.  When the federal agents came to interview Teresa about the purchase of 5813 Dundee Terrace, Edmond, Oklahoma, Teresa Therrien honestly had no idea what was going on.  She was at home caring for her then 2-year-old daughter, and could not have fathomed the possibility that she had committed a criminal act in the purchase of the property.  Simply put, Teresa and Rusty Therrien bought the entire scam, hook, line and sinker.  They wanted the American Dream and these people convinced them that they could legally have it.

Rusty Therrien is your typical blue-collar worker that works hard to earn a living for his family.  Prior to the purchase of the home in question, Rusty and Teresa lived in a mobile home

trailer in Jones, Oklahoma. Both worked hard to earn enough money to pay their bills and care for their family. When they began having problems with their landlord and the conditions of the trailer began to deteriorate, Rusty and Teresa began considering legal action and/or finding an alternate place to live. At no time did Rusty and Teresa Therrien seek out a scam to defraud Argent Mortgage Company or any kind of "get rich quick scheme." Rusty and Teresa were trying to find a suitable residence to live in as family, when Mr. Baum and Mr. Mykel began working their sub-prime lending scam.

This exact scam is happening over and over again in the mortgage and real estate industry today. First time home owners are being convinced through brokers, the sub prime mortgage market, and by unrealistic promises of future refinancing that they can afford bigger and more expensive homes. These buyers are biting off more than they can chew at the encouragement of brokers and sub prime lenders, only to be left with a house payment they can't afford and no chance at refinancing due to undisclosed penalties. While Rusty and Teresa Therrien must take responsibility for being uneducated and naive in signing documents that they did not understand, they were also relying on the advice and instruction of their mortgage broker, Mr. Anthony Jew. The representations being made to them by their fiduciaries were not consistent with the law, yet no one stopped to advise them of this. While Rusty and Teresa Therrien were guilty of falling victim to the scam, they were not the only ones allegedly making false misrepresentations in an effort to obtain the loan. Furthermore, they were not the masterminds behind the scam, but merely one of many uneducated and trusting buyers.

When a case is outside of the heartland, the court may appropriately vary from the guidelines. *See United States v. Rita*, 127 S.Ct. 2456, 2007 WL 1772146 (June 21, 2007) (a traditional departure

is justified, if the offense or offender is "atypical" and thus not within the "mine-run of similar" cases); *United States v. Stockheimer*, 157 F.3d 1082, 1091 (7th Cir. 1998) (noting permissibility of downward departure where intended loss related to fraud conviction overstated seriousness of offense in comparison to realistic probability of actual loss); *United States v. Redemann*, 295 F. Supp. 2d 887 (E.D. Wisc. 2003) (in bank fraud case where guidelines were **18-24 months**, court departed downward two levels in part because case outside the heartland and the guideline sentence was "greater than necessary" to satisfy the "purposes" of sentencing 5K2.20. **"Courts have long recognized that where the sentence called for by the guidelines would result in punishment greater than necessary the court can depart downward**."). This case is outside of the heartland. Rusty and Teresa Therrien are not your typical white-collar criminal defendants. They are blue-collar workers that were trying to find a home for their family and were scammed into believing that they could afford one.

### 4.   MR. AND MS. THERRIEN ARE FIRST-TIME OFFENDERS

The guideline sentence fails to take into account the Congressional directive that the "guidelines reflect the general appropriateness of imposing a sentence **other than imprisonment** in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j); *United States v. Polito*, 215 Fed. Appx. 354, 2007 WL 313463 (5th Cir. Jan. 31, 2007 (where defendant convicted of possession of child pornography and guidelines 27-33 months, district court's sentence of probation with one year house arrest reasonable in part because first offense).   Mr. and Mrs. Therrien are first-time offenders.

### 5.   LENGTH OF TIME UNTIL FIRST CRIME.

Departure warranted because guidelines fail to consider length of time defendant refrains from commission of first crime, here until ages 33 and 34. *United States v. Ward*, 814 F.Supp. 23 (E.D.Va. 1993). Other than this crime, Rusty and Teresa have lived a law-abiding life, which should be considered by the Court.

### 6.   PRISON TIME MORE SIGNIFICANT FOR FIRST OFFENDERS SO BELOW GUIDELINE SENTENCES MORE JUST

Rusty and Teresa Therrien have never committed a crime before this situation, and they have never been incarcerated. The "prison experience" will expose Mr. and Mrs. Therrien to a world totally foreign to them. Such exposure will substantially deter them from any future misconduct. Consideration of this factor is consistent with § 3553's directive that the sentence reflect the need for "just punishment," *id.* § 3553(a)(2)(A), and "adequate deterrence," *id.* § 3553(a)(2)(B)"). *See United States v. Paul*, 2007 WL 2384234 (9th Cir. August 17, 2007) (within guideline sentence of 16 months (high end) for taking government money unreasonably high in part because Paul was "a first-time offender with absolutely no criminal record whatsoever."); *see also*, *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend"); *United States v. Willis ---* F.Supp.2d ----, 2007 WL 926148 (E.D.Wis. March 28, 2007) (in drug case where guideline range was 120 months but statutory maximum was 60 months, sentence of one year and one day sufficient in part because sentence "sentence provided a substantial punishment for someone like defendant, who had never before been to jail and who engaged in no violence or dealing herself"); *United States*

*v. Cull*, 446 F.Supp.2d 961 (E.D. Wisc. 2006) (in marijuana case where guidelines 10 to 14 months, though defendant "not entitled to departure under pre-*Booker* standards" and where "nothing extraordinary about the case or the defendant," court imposes 2 months jail with 4 months home confinement as a condition of supervised release imposed because "<u>Defendant had never been confined before, so [2 months jail time] was sufficient to impress upon him the seriousness of the offense and to deter others under similar circumstances</u>").

### 7.   DEFENDANTS' OTHERWISE OUTSTANDING CHARACTERS

Attached to this Sentencing Memorandum are approximately 24 letters outlining Rusty and Teresa Therrien's character and reputation. These letters show the Court the "real" Rusty and Teresa Therrien that is known to those around them. Defense counsel has the opportunity to show the Court their outstanding character traits and exhibition of good character and parenting skills (notwithstanding the crime charged). <u>These letters simply show a couple who have made a terrible mistake, yet a couple who is worthy of significant consideration for their future</u>. *United States v. Santova*, 493 F.Supp.2d 1075 (E.D. Wisc. 2007 ) (because defendant "has significant positives in his character and background as evidenced by the letter from his family and fiancé which the guidelines did not take into account and because the judge "is permitted to consider the entirety of the defendant's background and character"); *United States v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc. 2006), held that where 24 year old music student convicted of possessing child pornography, and guidelines 121-151 months, and where he is in treatment and low risk of recidivism, and strong support from family, court imposes 70 months in part because "<u>the guidelines failed to consider defendant's otherwise outstanding character</u>, as depicted in the many supportive letters . . . . While § 3553(a)(1) requires the court to consider the character of the defendant, the guidelines account only for criminal history. <u>In cases where the defendant led an otherwise</u>

**praiseworthy life, the court should consider a sentence below the advisory range.** *See, e.g.,*
*United States v. Page*, No. 04-CR-106, 2005 U.S. Dist. LEXIS 19152,at 12 (E.D. Wis. Aug. 25,
2005); *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005)." (Emphasis added).

8.     **RUIN OF REPUTATION**

There can be no dispute that Mr. and Mrs. Therrien's convictions for wire fraud and money
laundering have ruined their reputation. Teresa has lost custody of three of her children to her ex-
husband as a result of this conviction. Forever, both of them will carry a cloud of suspicion just
because of the nature of the offense – long after having completed any sentence of incarceration.
*United States v. Adelson*, 441 F.Supp.2d 506 (SDNY 2006) (in securities fraud where guidelines
called for life, court imposes 42 months noting that factor of specific deterrence accounted for
because, "With his reputation ruined by his conviction, it was extremely unlikely that he would ever
involve himself in future misconduct."). Regardless of the sentence imposed, Rusty and Teresa
Therrien's reputations have been substantially ruined; they will always be labeled a felon; and it is
highly unlikely that Teresa will ever regain custody of three of her children.

9.     **LOSS TABLE OVERSTATES AMOUNT OF LOSS OR SERIOUSNESS OF
       OFFENSE.**

"There may be cases in which the offense level determined under this guideline substantially
overstates the seriousness of the offense." U.S.S.G. § 2B1.1, App. Note 19; *United States v.
Adelson*, 441 F.Supp.2d 506 (S.D.N.Y. 2006) (in securities fraud case, the incredibly high offense
level of 55 results from the "inordinate emphasis that the Sentencing Guidelines place in fraud cases
on the amount of the actual or intended financial loss). Rusty and Teresa Therrien were targeted and
preyed upon by Mr. Brandon Baum in the purchase of the property in question. Mr. Baum preyed
upon buyers with poor credit, desperate situations, first time home buyers, and buyers with a lack

20

of knowledge about real estate. Rusty and Teresa Therrien fit all of those categories. Rusty and

Teresa originally wanted to buy the mobile home and land they were then living on, until Mr. Baum

and Mr. Mykel convinced them that they could afford the property in question with promises of the

"World Plan," 1.9% financing and down payment assistance. Mr. Mykel completed all of the

paperwork for Mrs. Therrien and submitted it to Argent Mortgage. Argent Mortgage just wanted to

push the paperwork through, and either overlooked and/or looked the other way when Mrs.

Therrien's paperwork showed questionable entries (i.e., requesting that a new HUD1 be issued after

closing that **did not** reflect the $91,000 payment to Allied Construction). Had Mr. Baum, Mr. Mykel

and/or Argent been honest and practiced due diligence when funding the loan, Mrs. Therrien **would**

**not** have qualified for the loan in question.   Therefore, Mr. and Mrs. Therrien's alleged

misrepresentation was only a small part of the loss at issue in the present case. *See United States v.*

*Gregorio*, 956 F.2d 341 (1st Cir. 1992) (departure granted because losses resulting from fraudulently

obtained loan were not caused solely by the defendant's misrepresentation); *United States v. Milne*,

384 F.Supp.2d 1309 (E.D. Wis. 2005) (in bank fraud case where guidelines 18 to 24 months court

sentences to 6 months jail and 6 months home confinement for various reasons noting that "With

their almost singular focus on loss amount, the guidelines sometimes are insufficiently sensitive to

personal culpability").

Further, in the case of Rusty Therrien, two of the properties he is being held accountable for

did not even sustain an actual loss, yet he is being held accountable for a loss in the amount of

$233,000, when the actual loss was on $42,000. At a maximum, Mr. Therrien should be held

accountable for a loss greater than $70,000, which amounts to an 8-level enhancement instead of 12.

21

Mr. Therrien only received (not "profited") $26,000 from the transactions in question, and even then,

Mr. Therrien used that money to make his mortgage payments.

### 10.   MONEY LAUNDERING IS ONLY INCIDENTAL TO UNDERLYING CRIME OR WHERE NOT DRUG RELATED.

Money laundering statutes are not aimed at while collar fraud offenders, but at the drug trade,

racketeering, and more complex offenses. *See United States v. Threadgill*, 172 F.3d 357 (5th Cir.

1999); *United States v. Woods*, 159 F.3d 1132 (8th Cir. 1998) (where defendant filed for bankruptcy

but concealed ownership of $20,000 of stock and deposited proceeds of sale into bank account – and

where convicted of money laundering, downward departure proper because underlying offense was

not drug trafficking or some other offense typical of organized crime so offense did not fall into

"heartland" of money laundering crimes); *United States v. Buchanan*, 987 F.Supp. 56 (D.Mass.

1997) (downward departure from base offense level was warranted for bank president convicted of

money laundering that consisted of breaking down settlement check received by bank into several

checks in amounts of less than $10,000 and making those checks payable to fictitious people;

defendant's conduct was outside the heartland of the offense, which was characterized by knowing

conversion of large sums of money from illegal transactions, like drug trafficking or mob activities).

Mrs. Therrien's conduct was no where remotely similar to the conduct the money laundering statutes

where derived to combat.  **Further, "there is considerable evidence that even relatively short**

**sentences can have a strong deterrent effect on prospective 'white collar' offenders."** *United*

*States v. Adelson*, 441 F.Supp.2d 506 (SDNY 2006) (citing Richard Frase, *Punishment Purposes*,

58 Stanford L. Rev. 67, 80 (2005); Elizabeth Szockyj, *Imprisoning White Collar Criminals?*, 23 S.

Ill. U.L.J. 485, 492 (1998); United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing* 56 (2004)).

### 11.   THE DEFENDANTS ARE LAW ABIDING CITIZENS WHO JUST DID A STUPID THING

Rusty and Teresa Therrien have generally been law-abiding citizens all of their lives. Their actions here are simply outside of their general character, and more in line with their lack of knowledge and education level, and were simply stupid acts on their behalf without knowledge of and considering the full consequences that could follow. They bought into the scam without stopping to think about what was happening. While defense counsel recognizes that participation in a "stupid" act and/or a general lack of knowledge is not generally grounds for variance, at least one sentencing court has considered that factor, and we ask the Court to consider it here. *United States v. Hadash* 408 F.3d 1080, 1084 (8th Cir. 2005) (where defendant pled guilty of possession stolen firearms, and guidelines 12 to 18 months, district court reasonably departed downward by six levels because the district court said the defendant was simply "a law abiding citizen, who [did] an incredibly dumb thing" and said that the defendant "was not the type of defendant the guidelines section was designed to punish.").

At the time, neither Rusty nor Teresa Therrien were educated home buyers knowledgeable on the do's and don'ts of buying a home. They were uneducated, first-time home buyers with poor credit and a desperate situation. Rusty's credit was allegedly so poor that he didn't even qualify for "creative financing." Mrs. Therrien was a hair dresser (after six attempts to pass her cosmetology exam) and Rusty was a laborer for his father's business. Neither were knowledgeable about real estate, banking and/or anything else that had to do with buying a home. They relied on their

23

fiduciaries to guide them through the process, unknowingly placing their trust in individuals that were initiating and perpetrating the fraud.

## 12.    TO ENABLE DEFENDANTS TO MAKE RESTITUTION

Rusty and Teresa Therrien will be jointly and severally liable for $42,000 in restitution to Argent Mortgage Co.  Courts have considered restitution in deciding whether to depart downward from the guidelines.  *See United States v. Menyweather*, 447 F.3d 625,634 (9th Cir. 2006) (in case of embezzlement of $500,000, after *Booker*, no abuse for court to depart downward by 8 levels to probation in part because "a sentence of probation may have made Defendant better able to provide restitution to the victims of her crime, *see* 18 U.S.C. § 3553(a)(7)"); *United States v. Coleman*, 370 F.Supp.2d 661 (S.D. Ohio 2005) (where defendant was convicted of conspiracy to violate provisions of Food and Drug Act regarding misbranded drugs, and where guidelines were 6-12 months court sentence to probation and community treatment center and house arrest in part because the "Court concludes that five years of probation, as opposed to one year of imprisonment or imprisonment with supervised release, will afford Defendants more time to pay restitution.  18 U.S.C. § 3553(a)(7)"); *United States v. Petereson*, 363 F.Supp.2d 1060 (E.D. Wisc. 2005) (where defendant plead guilty to defrauding bank of $80,000 because of gambling addiction for which he is in counseling, and where guidelines range 12 to 18 months, court sentences to only one day in prison and supervised release for five years so defendant would not lose job and can pay restitution in light of the § 3553 (a)(7) admonition that judge consider the need to provide restitution to the victim of the offense).  If both Rusty and Teresa Therrien are imprisoned, there will be no restitution payments being made during the period of their incarceration.

### 13.   DEFENDANTS ARE UNLIKELY TO RE-OFFEND AND POSE NO DANGER TO THE PUBLIC

Rusty and Teresa Therrien are first-time offenders of a non-violent crime.  The chances that they are going to re-offend are highly unlikely and they pose no threat to the public.  *United States v. Cherry*, 487 F.3d 366 (6th Cir. 2007) (variance from guidelines "was proper in part because defendant had "low risk" of re-offending"); *United States v. Hein*, 463 F.Supp.2d 940 (E.D. Wisc. 2006) (where the defendant convicted of being felon in possession of ammunition, the guideline term of 12-18 is "greater than necessary to satisfy the purposes of sentencing" in part because "given his minimal prior record and law-abiding life for then past ten years . . . [the court] found that defendant was very unlikely to re-offend and posed no danger to the public.  Therefore, prison was not necessary."); *United States v. Baker*, (6th Cir. Sept. 17, 2007) (where defendant pled guilty to possession of unregistered firearm arising from altercation with wife during which gun accidentally discharged and guidelines range 27-33 months, below- guideline sentence of probation with one year house arrest in part because incarceration not necessary to protect the public).

### 14.   EXTRAORDINARY FAMILY SITUATIONS AND WHERE INCARCERATION WOULD HAVE HARSH EFFECT ON INNOCENT FAMILY MEMBERS.

Teresa Therrien has four children, Alexa Anlauf, age 17, Madelyn Anlauf, age 11, Lawrence Anlauf, age 8, and Rhaeley Therrien, age 3.  Mrs. Therrien was the primary caretaker of all four children from birth until March, 2007, when Mrs. Therrien's ex-husband sought and obtained an ex parte emergency change of custody citing Mrs. Therrien's then upcoming federal criminal trial as the main reason for the emergency motion.  Since that time, Mrs. Therrien's oldest three children have been residing with their father, who has been utterly uncooperative in facilitating visitation

between Mrs. Therrien and her three children. A final custody determination in that case has been stayed pending the outcome of this sentencing. Should Mrs. Therrien receive a sentence of confinement, it is almost certain that she will lose custody of her three children, children who had lived with her since they were born. Finally, should both Teresa and Rusty Therrien receive sentences of incarceration, young Rhaeley Therrien, age 3, will lose the care and support of **both** of her parents at the same time. While she has family members that will care for her, it is not the same as being cared for by your mother during such an important time in a child's developmental life. *See United States v. Greer*, 375 F.Supp.2d 790 (E.D. Wisc. 2005) (**Research says "that if the mother-child bond is disrupted between the ages of six months and four years, a child's development may be greatly effected."**). All of Teresa Therrien's children are innocent family members that have and will suffer harsh effects as a result of Teresa's incarceration. *See generally*, July 2, 2007 Statement of President Bush commuting Lewis "Scooter" Libby's 30-month sentence (available at http://www.whitehouse.gov/news/releases/2007/07/20070702-3.html) ("the [within guideline] prison sentence given to Mr. Libby is excessive. . . His wife and young children have suffered immensely."); *United States v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000) (within district court's discretion to depart downward 4 levels for extraordinary family circumstances based on the fact that there is an 8-year-old son who lost a father and would be losing a mother for a substantial period of time); *United States v. Milikowsky*, 65 F.3d 4, 8 (2d Cir. 1995) ("Among the permissible justifications for downward departure . . . is the need, given appropriate circumstances, to reduce the destructive effects that incarceration of a defendant may have on innocent third parties."); *United States v. Mateo*, 299 F.Supp.2d 201 (S.D.N.Y. 2004) (where defendant's two young children were thrust into the care of defendant's relatives, who report extreme difficulties in raising them and

26

where both fathers are absent, and the children, now ages six and one, will be raised apart from both biological parents for as long as the defendant is in custody, a downward departure is appropriate); John Hagan & Ronit Dinovitzer, *Collateral Consequences of Imprisonment for Children, Communities, and Prisoners*, 26 Crime & Justice 121 (1999) (a departure is most appropriate when the defendant could be given probation (or home confinement) rather than incarceration with only a small downward departure).

### 15. STRONG FAMILY SUPPORT THAT AIDS REHABILITATION.

Rusty and Teresa Therrien have an extended supportive family.  Their family accompanied them through the trial and have continued to support their efforts today. If house arrest is ordered, all of their family have offered their support and assistance.  While this is not a typical ground for variance, it has been recognized as an appropriate consideration. *United States v. Wachowiak,* 412 F.Supp.2d 958  (E.D. Wisc. 2006) (in possession of porn case, where guidelines 120-151 months, below guideline sentence of 70 months imposed in part because "the guidelines failed to account for the strong family support defendant enjoyed, which would aid in his rehabilitation and re-integration into the community. Because defendant's family and friends have not shunned him despite learning of his crime, he will likely not feel compelled to remain secretive if tempted to re-offend. Rather, he will seek help and support").

### 16. DEFENDANT TERESA THERRIEN ALREADY PUNISHED BY COLLATERAL CONSEQUENCES.

Teresa Therrien has temporarily lost custody of her three children from a previous marriage. To a mother, there is no greater collateral consequence.  Punishment for collateral consequences has been considered as a ground for variance from the Guidelines, and we submit that it is appropriate

for consideration here.  *See generally, United States v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc. 2006).

### 17.    DEFENDANTS' MOTIVE NOT VENAL

"The defendant's motive for committing the offense is one important factor [in determining the sentence]." *See* 1 W. LeFave & A. Scott, Substantive Criminal Law § 3.6(b), p. 324 (1986). While Rusty and Teresa Therrien are not admitting to any motive to defraud the bank, they submit that they were trying to get their family into a home that had working heat and that would provide a suitable environment for their children to live in.  Rusty and Teresa were living in a broken down mobile trailer home in Jones, Oklahoma.  They were having problems with their landlord and he initiated eviction proceedings against them.  Time was of the essence and Rusty and Teresa needed to find a suitable home for their family.  The money Rusty and Teresa received from the purchase of the house was not used for luxury items, but was used to pay the mortgage on the residence where the lived and to make minor improvements.  *See United States v. Milne*, 6384 F.Supp.2d 1309 (E.D. Wisc. 2005) (in bank fraud case a mitigation factor is that the defendant did not spend the bank's money on luxury items but rather to prop up a failing business.  With their almost singular focus on loss amount, the guidelines sometimes are insufficiently sensitive to personal culpability).   They were not intending to "flip" the house and/or utilize it for personal gain. They intended to live in the property as their marital residence with their one child, along with Teresa's three children from a previous marriage.

### 18.    THE GOOD IN THE DEFENDANTS' LIFE CAN MITIGATE THE BAD

Rusty and Teresa Therrien have lived good lives: law-abiding (except for this crime), hard working, compassionate, kind, gentle, caring, etc. (*See* letters).  The good in their lives should be

28

recognized and to a degree should off-set their misconduct.  *See United States v. Santova*, 493

F.Supp.2d 1075 (E.D. Wisc. 2007) (because defendant "has significant positives in his character and

background as evidenced by the letter from his family and fiancé which the guidelines did not take

into account and because the judge "is permitted to consider the entirety of the defendant's

background and character"); *United States v. Adelson*  441 F.Supp.2d 506  (S.D.N.Y. 2006)  (in

securities fraud case, where guidelines call for life sentence, court imposes 42 month sentence in part

because of the defendant's past integrity and good deeds. "But, surely, if ever a man is to receive

credit for the good he has done, and his immediate misconduct assessed in the context of his overall

life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance.

This elementary principle of weighing the good with the bad, which is basic to all the great religions,

moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it

directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the

defendant"). (Emphasis added).

### 19.    A DELAY BETWEEN OFFENSE AND CHARGE GIVES COMMUNITY TRACK RECORD OF GOOD BEHAVIOR TO MEASURE REHABILITATION.

Two years have passed since Rusty and Teresa Therrien's initial contact with federal law

enforcement.  It is clear from the PSR and from the absence of any allegations of misconduct that

Mr. and Mrs. Therrien have led an exemplary life since their initial contact with the federal agents.

One need only read the letters from Rusty and Teresa Therrien's family and friends to see their post-

investigation rehabilitation.  Further, courts have considered the delay between the charge and the

misconduct or the delay between the misconduct and sentencing in determining the deterrent value.

*See Coleman v. Balkcom*, 451 U.S. 949, 952 (1981) (Stevens, J., concurring in denial of cert.) ("The

deterrent value of any punishment is, of course, related to the promptness with which it is inflicted."); *United States v. Gregory*, 322 F.3d 1157 (9th Cir. 2003) (where defendant pled guilty to money laundering and two years later was indicted for drugs crimes related to the money laundering, dismissal of indictment improper, but district court on remand may depart to impose sentence that would have been imposed had both crimes been brought at same time. A departure "may be appropriate to mitigate the effects of any loss of grouping,"); *United States v. Cornielle*, 171 F.3d 748, 754 (2d Cir. 1999) (among other things, four-year pre-indictment delay in perjury prosecution warranted one-level downward departure).

## 20.    MERCY FROM THE COURT

"Our sentences are too long, our sentences are too severe, our sentences are too harsh... [and because there are so few pardons] there is no compassion in the system. There's no mercy in the system."), *see* Testimony Of Justice Anthony Kennedy before the Senate Judiciary Committee February 14, 2007 in response to Senator Whitehouse, *video link* accessible at Professor Berman's Sentencing Law and Policy Blog of Feb. 15, 2007); Justice Kennedy 's ABA speech of 2003 ("A country which is secure in its institutions, confident in its laws should not be ashamed of the concept of mercy. As the greatest of poets has said 'mercy is the mightiest in the mightiest. It becomes the throned monarch better than his crown'").   Mercy should be considered here.   Rusty and Teresa Therrien are 33 and 34- years-old.  Teresa is a mother of four children – still with a promising future as a wife and mother.  Rusty is a hard worker, and both share one child together that is at risk of losing both parents at the same time.  Prior to *Booker*, mercy may not have been a subject of consideration, but today, the Court may consider anything within the purview of §3553. Accordingly, we submit that it is appropriate to consider this factor in varying from the Guidelines.

## V. **CONCLUSION**

Defendants Rusty and Teresa Therrien and their counsel recognize the seriousness of the offenses for which they were convicted. This memorandum is not intended in any way to denigrate or diminish the seriousness of the crimes. Nor is it an indictment of the U.S. SENTENCING GUIDELINES. Rather, we present this memo as authority for the Court to exercise sentencing discretion pursuant to the statutory considerations of §3553. Clearly we have shown the Court some examples of departures/variance from the Guidelines. Counsel recognizes that these are the extreme variances from the Guidelines; however, Rusty and Teresa Therrien (and especially Teresa) represent two of the few defendants worthy of an extreme variance – even for these crimes. The bases for variance provided herein, respectfully, authorize the Court to exercise sentencing discretion.

Rusty and Teresa Therrien's counsel, friends and family believe that they have enormous potential and are capable of contributing to society outside of prison. Based on the totality of the circumstances and the unique character of these defendants, especially Teresa, it is submitted that justice would be served by varying from the Guidelines and sentencing Teresa Therrien to probation or a split sentence of prison and house arrest, and departing downward significantly from the Guidelines where Rusty Therrien is concerned. The defense recognizes the need for punishment, deterrence, protection of the public and rehabilitation. Teresa Therrien has already been punished by the ex parte custodial loss of her three children. Each day she is without them she is punished all over again. There is no greater loss to a mother than the companionship and custody of her children. Further, neither Rusty nor Teresa Therrien pose a threat to the public, and the sentences suggested are sufficient but not greater than necessary to satisfy the purposes of sentencing.

31

Notwithstanding the need for punishment, deterrence, protection of the public and rehabilitation in any given criminal case, counsel makes this unique request to allow Teresa Therrien a rare opportunity to correct her mistakes and to re-integrate into society immediately so that she may be a mother to her three-year-old daughter during the critical years of her development and have a fighting chance at retaining custody of her other three children, children that previously lived with since they were born. If not granted probation, the defense prays that the Court consider a very significant variance from the Guideline range of punishment for both Teresa (now at 18-24 months representing Level 15, Category I) and Rusty (now at 30 to 37 months representing Level 19, Category I). The need for punishment, deterrence, protection of the public and rehabilitation can all be accomplished by sentencing outside of the heartland of the Guidelines.

## VI.  PRAYER

WHEREFORE, defendant prays:

1.      That the Court vary from the Guidelines to a punishment significantly less than the Guideline range of 18-24 months for Teresa and 30-37 for Rusty;

2.      That the Court sentence Teresa to (1) straight probation, (2) home confinement, or (3) a split sentence with equal time incarcerated and equal time on home confinement.

3.      That the Court recommend that, if eligible, any incarceration imposed upon Teresa Therrien, which may be ordered shall be served at the prison camp at Bryan, Texas, or any other appropriate federal prison camp nearest to her home in Oklahoma City; and that, if eligible, any incarceration imposed upon Rusty Therrien, which may be ordered shall be served at the **Federal Prison Camp El Reno** in El Reno, Oklahoma, or any other appropriate federal prison camp nearest to his home in Oklahoma City

32

4.      That the Court grant self-surrender to the designated facilities to both Rusty and

Teresa Therrien.

Respectfully Submitted,


  /s Stephen Jones
Stephen Jones, OBA No. 4805
April M. Davis, OBA No. 17854
JONES, OTJEN, DAVIS & NIXON
114 E. Broadway, Suite 1100
P.O. Box 472
Enid, OK 73702-0472
(580) 242-5500 Telephone
(580) 242-4556 Fax
**_Attorney for Rusty & Teresa Therrien_**


## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2007, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant: **Susan Dickerson Cox**, Asst. U.S. Attorney; **Robert L. Wyatt, IV**, for Joe Therrien; **J.W. Coyle, III**, for Charles and Gayle Caldwell; and **Thomas McCormick** for Brandon Baum.

/s Stephen Jones

# INDEX TO
# MITIGATION LETTERS

**A.     TERESA THERRIEN**

Rachelle Renee Allen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Alexa Anlauf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Madelyn Anlauf . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Nancy Bates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Mark and Kristina Beall . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Deborah Brunetti . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sonja Forth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Doc Gattis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Brittney Judge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Amy McCullough . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Barbara Therrien . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Conrad Therrien . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

 Linda VanMeter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Jared Wright . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Shay Wright . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**B.     RUSTY THERRIEN**

Nancy Bates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mark and Kristina Beall . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Deborah Brunetti** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**Sonja Forth** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**Doc Gattis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**Amy McCullough** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**Barbara Therrien** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**Conrad Therrien** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**Linda VanMeter** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**Jared Wright** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**Phylis Wright** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**Shay Wright** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

(TUE) 7 17 2007 21:40/ST. 21:39/NO. 5111437719  P. 2

FROM BOULDER INTN'L HOSTEL

Rachelle Renee Allen
7201 N.W. 122nd #8204
Oklahoma city, OK 73142

July 14, 2007

The Honorable Joe Heaton
C/o Stephen Jones

Jones, Otjen, Davis and Nixon
P.O. Box 472 Enid, Oklahoma 73072-0472

-re: sentencing of Teresa and Rusty Therrien
Case number 06-cr-264-he

Dear Judge Heaton,

My name is Rachelle Renee Allen and I have known Teresa since 1992. When we met we became fast friends. We were both young mothers and shared the joy of two toddlers, Brittney and Alexa. It didn't take long and we were as close as family.

New children were born and more memories made. Throughout our friendship the roads have taken many turns. We have been there during the best and worst times. Birthday parties, sleep overs, white water, Frontier City, Potty training,
Emergency rooms and divorce.

During the highs as well as the lows Teresa has been an exceptional mother. I admire her patience and her willing to yield to her children's needs. Alexa, Madeline, Rance and Ray all know her as their individual mother. Its clear to see that they all have a tailor made mom just for them. At night time when they pray she lies down and holds her children while they pray one on one. She has taught them a truth in their life and has always let them know that God is very real... I'm sure she has taught them things she is not even aware of like........Strength, perseverance, endurance and faith.

Looking back on our time together I realize that Teresa has lived her life according to 1 Corinthians 13. The chapter is on Love and if you possessed all gifts, suffering, knowledge and the list goes on they would mean nothing without love. If you had all these things and you had not love you would be nothing. The very last scripture in this chapter reads....Three things will last forever-faith, hope and love-and the greatest of these ids love. Well, I tell you the truth Teresa has love. No matter what she has loved.

The best gift Teresa has been given is LOVE. The best gift she has given is LOVE. To know her is to see LOVE. To know her is to feel LOVE.

For such a Loving Mother to be in a situation like the loss of time with her babies is a real life tragedy. Teresa lays on her bed uncontrollably crying in an uncontrollable situation.

This whole thing from beginning to even this point has had effects on her that will take quite awhile to heal.

I am telling you of her LOVE but how can you ever know unless you know her. For a woman of such to go through this situation are times harder than the one will a calloused heart. She holds on to her husband for strength. That is the next thing to break her heart. The loss of her husband is going to be painful in its own right. They are so close. He met her and fell in love the spite she had 3 children an ex-husband and controlling parents. He took on this just because he loved her so. They have been through hell together and he still seems to keep on walking. It has really put a strain on their marriage and as a family unit... They are hanging on to hope. That's all they have but that is surely enough. Rusty is the husband she always wanted and the one she wanted has stuck by her side. Now they face the loss of one another for a period of unknown time...

Judge Heaton,

Please have mercy on this family who has fought so hard to remain together. The punishment I believe has already been served. You are the Judge in this case not I but I pray and hope that you search your heart like a lighthouse see where they have been and see where they are trying to go. Have mercy on this family. Please allow Teresa to be on house arrest and the minimum time for Rusty. I really do hope that this outcome is for everyone's betterment.

Thank You and please have leniency.

God Bless You and Yours

Rachelle R. Allen

July 12, 2007

Alexa Anlauf
3112 S.W. 102nd St.
Oklahoma City, OK  73159

The Honorable Joe Heaton
c/o Stephen Jones
JONES, OTJEN, DAVIS & NIXON
P.O. Box 472
Enid, OK 73702-0472

      RE:    Sentencing of Teresa Therrien
             *United States vs. Teresa Therrien*, Case No. 06-CR-264-HE

Dear Judge Heaton:

Teresa Therrien is my mother. I am the oldest child. I am 17 years old. I do not know all of the details of this case, but I do know that she is a wonderful mother. I love her very much.

My mom is a very loving woman. When my siblings and I are with her she always tries to keep us happy. She prays with each of us every night before we go to sleep. She has helped me a lot through depression and anxiety problems. She is always there for me to help calm me down and look for the bright side of things. We also have fun together. She is a hairdresser so she will do my hair for me while we listen to music and talk. She also does that type of thing with her clients and they really seem to enjoy her company. It is hard to see such a loving woman go through the hurt and worry that she is going through about this case. Especially for the fact that this woman is my mom. I honestly believe that my mom would never intentionally do something to hurt anyone.

It is truly devastating to me to know that if my mother goes to prison, that I won't be able to see her or hug her unless I drive out of state, which if that happens, I will be doing that as often as possible. It is incredibly difficult to hear my mom being called a criminal, for her heart is anything but. If she could get mostly house arrest, it would be a blessing, just so I can see and spend time with my mom, whom I love.

I know that the fact of me being seventeen years old may cause you to question my judgment, but I want you to know that I feel that I am mature, a good judge of character and I know that my mother is a good woman who doesn't belong in a jail cell.
Thank you.
Sincerely,


Alexa Anlauf

3

To: Judge Heaton

From: Madelyn Anlauf

   I'm Madelyn Anlauf, Teresa Therrien's
12 year old daughter, ~~and could be~~ Teresa, Rusty,
and Joe Therrien are three people me and a
lot of other people love very much, and we
don't want to see them go to jail because they
are very amazing people and don't deserve
that.

   If Rusty and my mom went to jail
everybody would be very sad and always
visit them but it wouldn't be the same
as them being at home everybody including
them would like that much better. Also
there youngest daughter Rhaeley who is
allmost 4 would be very upset to see her
mommy and Daddy go to jail because she loves them
so much and couldn't live without them.
The same with me my older sister Alexa
and my younger brother Rance. But Rance
is allready mad and upset because he can't
live with his mother. He gets angry

4

all the time and gets violent like hitting
and kicking when you do the littlest things,
and I'm getting worried so are my mom
and Rusty!

My Mom Terresa is the greatest mom
ever and Rusty is the best step father
any body could ever have, and it would
break my heart if they had to go. They
both worked so hard for us to have food
water and a house over our heads and
that's only one reason why I love them!
And when Rusty talks to people he refers
to us as he own. And he has been to good to
us. That's why I love him so much.

If they went to jail we wouldn't be
able to pray and read a book at night with my mom sit at
the table and talk about how our
days went, we wouldn't get to run inside
my mom's house and give my mom a big
kiss and give rusty a big hug! And me
and my mom wouldn't be able to do our
special kiss that we do every night
we're over there, And my mom and Rusty would
have to be seperated
from each other for a long amount of time.
and they love each other to much for that.

5

They also wouldn't be able to visit with Joe Therrien Rusty's brother, who might be going to jail also.

If Joe went to Jail he would have to miss out on seeing his first child being born. Me and a lot of other people love him because he's such a good person, and I could never see him, Rusty, or Teresa Therrien going to jail.

It is very sad and scary to know that these three people who I love might be going out of my life soon. My mom and Rusty have allready suffered enough having us taken away from them. And Joe doesn't deserve having to not be able to see his child be born. So I don't think they deserve this kind of punishment and I would be very happy if they just had to stay at home so everybody can keep enjoing their lives with Rusty, Teresa (my mom), and Joe Therrien there with them.

Madelyn Anlauf

July 17, 2007

Nancy Bates
400 Little Chisholm Circle
Edmond, OK  73003

The Honorable Joe Heaton
c/o Stephen Jones
JONES, OTJEN, DAVIS & DAVIS
P.O. Box 472
Enid, OK 73702

   RE:  Sentencing of Teresa Therrien
     *United States vs. Teresa Therrien*, Case No. 06-CR-264-HE

Dear Judge Heaton:

I have known Teresa for five years.  She is a kind, caring and compassionate person.  She is a quiet and thoughtful person.

I have been to birthday parties for her children, where I could see the love between Teresa and her children.  She has kept her family's spirits up through this terrible situation.

Teresa's youngest child is only four years old.  I cannot imagine how her children will be affected by their mother being taken away.  There are four children to consider.  Will they understand what is happening to their family?

Teresa has suffered greatly during this ordeal, knowing she may have to leave her children.  The pain must be unbearable.

Please consider Teresa and her family when you give your sentence.

Sincerely,

*Nancy Bates*
Nancy Bates

7

Mark & Kristina Beall
1805 Oak Forest
Edmond, OK. 73003
July 15, 2007

The Honorable Joe Heaton
c/o Stephen Jones
Jones, Otjen, Davis & Nixon
PO Box 472
Enid, OK. 73702-0472

      RE:     Sentencing of Teresa Therrien
              United States vs. Teresa Therrien, Case No. 06-CR-264-HE

Dear Judge Heaton:

I write to you this day to request that you will consider leniency in the sentencing of Teresa Therrien. It feels odd for us to try and influence the decision of an esteemed legal mind that has reached the pinnacle of their profession, but we will certainly try, as not only her life, but the lives of her four young children hang in the balance.

We met Teresa through our youngest child and as our children developed instant friendships, we also quickly became great friends. Teresa has a very engaging personality that can light up a room with her ever present smile and lust for happiness. She has proven to be the type of friend that a friend would like to have and has always been there to provide whatever assistance was required whether volunteering at church or school. Teresa is a wonderful mother and puts her children first in her life and she would make any sacrifice to make sure that her children never lacked anything that she could provide. There can not be any children on this earth who are loved anymore than she loves her children. This terrible situation that she became involved may have been partially influenced by her love for her children. We think that at some subconscious level that her judgment may have been impaired by her desire to provide her children with the very best environment that she could provide for them. Teresa is a very honest and religious person and we honestly believe that she had no knowledge that she was breaking the law, her only crime was to trust the professionals in the complex real estate, mortgage and banking industry. We certainly are not aware of all of the legal intricacies of this case or of the multiple defendants and their motives for financial profit. We are, however aware that Teresa only wanted a nicer home and quality of life for her children and when that opportunity presented itself she trusted others who made it happen as an unknowing bystander in search of the American dream. As sad as it may seem Teresa is being sentenced to prison for trust, love and her inability to read and understand complex legal documents.

8

The American legal system is the greatest in the world due to the fact that honorable men like you are there to interpret the law and to provide appropriate sentences. We pray that as you consider the sentencing of Teresa that you consider the lives of her four young children as well. The lives of her children will be greatly impacted by their mother's sentence at a pivotal time in their lives. Teresa has already dealt with great hardships throughout the entire process and she has tried her best to hold together her family. She has already been dealt the greatest punishment that a mother can be dealt in having to explain to her children why she may no longer be a part of their lives. I'm sure that you are aware of the entire situation and fully understand your obligation to provide justice as well as compassion and understanding. I'm also sure that you are aware of the great amount of remorse that Teresa has exhibited and of her previously clean legal record. We in no way want to excuse what has happened or to minimize the decision of the jury, but the rehabilitation portion of justice has already been served with Teresa and will certainly not be enhanced by a stay in federal prison. We pray that you will consider probation and or home confinement not only for the sake of Teresa, but for the sake of her children.

Sincerely,

Mark Beall

Kristina Beall

9

July 12, 2007

Deborah Brunetti
1422 E. Cleveland St.
Guthrie OK 73044

The Honorable Joe Heaton
c/o Stephen Jones
JONES, OTJEN, DAVIS & NIXON
P.O. Box 472
Enid, OK 73702-0472

   RE:  Sentencing of Teresa Therrien
     *United States vs. Teresa Therrien*, Case No. 06-CR-264-HE

Dear Judge Heaton:

Teresa Therrien is the wife of my nephew, Rusty Therrien. I have known Teresa since
she and Rusty started dating, approximately five years ago. During these past five years,
I have been honored to have a relationship with Teresa that has shown me what an
exceptionally kind, loving and sincere person she is. My opinion is that Teresa would
have a hard time hurting anyone. I am writing this letter concerning the pending
sentencing and punishment of the above mentioned case.

It has been my observation that Teresa is a genuinely kind person. She is the only person
that I know that has **never,** in my presence, had an unkind word to say about anyone.

Since the loss of my husband two years ago and my relocation from Massachusetts to
Oklahoma, Teresa has gone out of her way to help me readjust my life. She diligently
worked side by side with her husband, Rusty, to renovate my home, her only reward
being my happiness and well being. Her kind and loving support has been without
duplication in my time of need and readjustment.

Teresa is the mother of four children ranging in age from seventeen to four years old. I
have observed on a daily basis the wonderful relationship she has with her children. I can
truly say that there is an enormous amount of love in that family. Her absence will have
a profoundly negative effect on her children. Unfortunately, the children will be
separated during her absence. The three oldest, will go with their father, and the
youngest with Rusty's mother and father. I shudder to think of the effect this will have
on them. The youngest child is "attached at the hip" to her mother, and to separate them
would have a horrific effect on her. She is too young to understand why her mommy is
gone.

I feel sure that the crime Teresa is convicted of is totally out of character and was done
under great duress. While this does not excuse the crime, I feel that Teresa has already
suffered greatly as a result of her actions. She is facing the loss of her children, and this

10

is probably the worst punishment any mother could receive.  Unfortunately, her children will be punished also.

In closing, I would beseech the court to have leniency in her sentencing, hopefully probation or house arrest, if for no other reason, the emotional and mental well being of her children.

Sincerely,

*Deborah A. Brunetti*

Deborah A. Brunetti

Dear Judge Joe Heaton,

My name is Sonja. I am a good friend of Rusty and Teresea
Therrian. I wanted to participate in writing you just a quick
note about my relationship with the two of them in hopes that
your decision for sentencing them would be a little easier. I
have been friends with them since mid-high school. Teresea
and I have become really close friends. We both have
teenagers and our three year old daughters are just days apart
and coincidentally named Rhaeley and Caylee!

Rusty and Teresea are very family oriented. They seldom do
anything with out their children. They are both great at their
jobs and to each other. Teresea and I have become very close
by keeping God top priority in our lives. We have taught each
other a lot about friendships and what is important in life as
well as having enough faith to get us through tough times. I
know both of them well enough to know that they love their
family more than anything and would never jeopardize their
future with them knowingly. This whole ordeal has been so
hard on them but through a lot of prayer and support from
friends and family they are still hopeful that this will end so
they can get on with their lives in the way God intended them
to.

I hope and pray that the letters you receive will help you in
your decision for each of their punishment as I'm sure it is not
easy to do alone.

Thank your for taking the time to read this.

Sincerely,

Sonja Forth

12

7-22-07

Your Honor:

I cant emagine having to make a judgment such as this. Figuring out what to do with two people that love their children, work hard but then make a bad decision. Do I give them a break or do I send them to prison.

If a person is a low life and a danger to society they deserve prision. When they are people that are productive and not dangerious, then they deserve probation. That way they can continue to be productive, take care of their children and work on making better decisions. Please concider the childrens circumstanses. They need their parents.

I know that Rusty and Tereasa have people that love them and I am sure they will persiver what ever your judgment may be.

Sincerly
Doc Gatlin

13

(TUE) 7 17 2007 21:40/ST. 21:39/NO. 5111437719 P 4

FROM BOULDER INTN`L HOSTEL

Brittney Marie Judge
3804 N.W. 58th Terr.
Oklahoma City, Oklahoma 73112

7-14-07

The Honorable Joe Heaton
C/o Stephen Jones

Jones, Otjen, Davis and Nixon
P.O. Box 472 Enid Oklahoma 73702-0472

-re: sentencing of Teresa Therrien

U.S. vs. Teresa Therrien
case number 06-cr-264-he

Dear Judge Heaton,
    I am 17 years old and I have known Teresa for 15. Teresa's daughter and I are the same age and have been best friends since 1992. For the most part, Teresa has been there for me my whole life, we have even lived together for a portion of the time. I have always thought of her as a second mother. Although I don't know the facts of the case, I know what kind of person Teresa is.

    Growing up I have seen many different aspects of Teresa. She has taught me many life lessons and has always been there for me with wisdom to share. Back when I was growing up, my family went through many hard times. It seemed like some points down the road, many doors were shut. No one has ever been more welcoming towards us them Teresa. It seemed like no matter what was going on, she has always been more then willing to offer her time, money, knowledge and kindness to help us out. She is not only generous to my family but also to others who she might not even know. She is definitely one of the most inspiring persons I know.

    In all the years I have known Teresa, I have never seen her as down as she has been during this case. Not only has she had to worry every day about the case but also her children. Everyone could tell how bad it has hurt her to see her kids go. Teresa has always been a wonderful mom and just to think about what se has had to go through is heartbreaking. Not only has she suffered, but so has her children. With Alexa, her oldest daughter, being my best friend, I know how bad the children are hurting. They don't want to see their mom go to prison. Not only have they seen their mom suffer but now she is going to be miles away from home. Her kids have always, and will always, be there for her. Now they are all going to have to go thru the pain and sorrow of their departure from each other.

14

(TUE) 7 17 2007 21:41/ST. 21:39/NO. 5111437719 P 5

FROM BOULDER INTN'L HOSTEL

When I first heard some about what was going on, I was shocked. I would have never thought that Teresa, this beautiful, kind, caring, gentle woman who has helped raise me could be involved in such a mistake, and that's what it was, a mistake.

If I were the Judge, although it would be strange seeing as my name would be "Judge Judge," I would think a punishment would be definitely need to be made. In the Bible it talks about how no sin should go unpunished. Fairly enough, I think house arrest would be reasonable. Not only would she be punished but she would still be able to serve the purpose of being the great mother that she is.

Also, without being as selfish as possible, I would like to have Teresa close to go to for advice. This year I will be A Senior and the editor of my school newspaper at Putnam City Original. I am afraid to take on such a task and I'm sure that I am going to need some of her pep speeches to keep me going. I would also really like to have her at my graduation since she is the women who helped me with certain problems all of these years. I love her and would hate for her to be so far away.

Thank you for taking your time to read this letter. God Bless You.

Amy McCullough
1704 Creekside Ave.
Sherman, TX  75092
July 13, 2007

The Honorable Joe Heaton
c/o Stephen Jones
Jones, Otjen, Davis & Nixon
P.O. Box 472
Enid, OK  73702-0472

RE:     Sentencing of Teresa Therrien
        United States vs. Teresa Therrien, Case No.  06-CR-264-HE

Dear Judge Heaton:

Teresa Therrien is my cousin, I have known her all of my life (30 years).  I am not fully aware of the details or facts of this case, I am writing concerning the sentencing.

Teresa Therrien has a wonderful personality and character.  She is able to make anyone smile and laugh, she is a "people person" - everyone likes her!  Teresa has a loving, caring spirit.  She is the type of person who hurts when she sees others hurt.  Teresa loves to help others.  Teresa's main focus in her life is her beautiful 4 children.  She is a proud mother, and if she is not at work, she is doing something for or with her children.  Teresa is the mother that other women strive to be, she adores her children and her children absolutely adore her.  One of her daughters comes to visit us during the summer (and stay a few days), we usually have to cut our visit short because she misses her mom!  I believe that Teresa has learned from mistakes that she has made in the past, but has used it to her advantage to become a stronger, better person and is able to make better decisions.

I am deeply concerned about Teresa being away from her children.  She is the primary caregiver for her children, and has never been apart from them until the oldest 3 were recently removed from her care.  Being removed from their mother's care for unknown reasons has taken its toll on all 3 children:  the oldest daughter's grades have fallen to almost failing (high school level), the middle daughter is confused about why all of this is happening and is unsure what to think or how to feel, and her son cries because he wants to go home to be with his mother.  Through conversation with Teresa's 11 year old daughter, I am concerned that the children are not being encouraged to continue a "normal" healthy relationship with their mother, nor are they being allowed a visitation schedule that would make the separation any easier.  Weekends are not enough when you are being taken from your primary caregiver.  I have been told that the custody of these children is pending the outcome of this case.

With all of this in mind, I would like to ask the court to consider a minimal sentence for Teresa Therrien.  Being the mother of 4 children, sole provider for 3 of them, it is imperative that Teresa is able to be with her children and work to provide for them.  Teresa and her family have suffered enormously as a result of this charge and conviction.

16

I understand the crime and conviction, I pray that Teresa is able to serve a portion of her sentence on home confinement or probation to allow her to take care of responsibilities as a mother.

Thank you for your time.

Sincerely,
Amy L. McCullough

*Amy McCullough*

July 15, 2007

Barbara Therrien
511 E. Springer
Guthrie, OK 73044

The Honorable Joe Heaton
c/o Stephen Jones
JONES, OTJEN, DAVIS & NIXON
P.O. Box 472
Enid, OK 73702-0472

      RE:    Sentencing of Teresa Therrien
             *United States vs. Teresa Therrien*, Case No. 06-CR-264-HE

Dear Judge Heaton:

Teresa is my daughter-in-law. She is the sweetest, kindness and most loving person I know. However, Teresa is very naive and very trusting, always seeing the good in people.

I could not have asked for a better wife for my son. Currently, my house is under renovation, and Teresa, along with Rusty, is always there on weekends to help with this task.

Teresa has three children from a previous marriage and one with my son, Rusty. She is a model mother and wife. The children's ages are 17, 12, 8, and 4. Three girls and one boy. I have never seen anyone with as much patience has she has, **never** raising her voice. These children love their mother openly and I don't know how they will react to the separation that incarceration will cause, especially the four year old girl and the 8 year old boy. Unfortunately, the three oldest children will have to be separated from the youngest. This will affect them in a very negative way, as it is such a close family.

Teresa is a hairdresser in Guthrie. All of her clients know what she is facing and are holding no prejudice toward her. They love her not just for the job she does, but as a person. For instance, she has one client that is in her 80's. Every week, either Teresa or Rusty will go to the woman's home and pick her up for her hair appointment, then take her back home. Teresa doesn't charge set prices for most people, instead, what they can afford, as the majority of her clientele is older women.

The crime in which Teresa has been convicted of is totally out of character, and I feel it was committed due to her naivety. Although, this does not excuse the crime, I just want you to know that the Teresa that I know would never **intentionally** break the law.

18

Teresa has been severely punished already.  She suffers everyday, wondering what will happen to her family.  She is so sad all the time, but still smiles and tries to be upbeat for the sake of her children.

In the sentencing process, I must beg leniency for Teresa, hopefully probation or house arrest.  I ask you to consider this, if for no other reason, the mental and emotional wellbeing of the children.

Sincerely,

Barbara A. Therrien

July 20, 2007

Conrad R. Therrien
511 E. Springer
Guthrie, OK 73044

The Honorable Joe Heaton
c/o Stephen Jones
JONES, OTJEN, DAVIS, & NIXON
P.O. Box 472
Enid, OK 73702-0472

      RE:  Sentencing of Teresa Therrien
            *United States vs. Teresa Therrien,* Case No. 06-CR-264-HE

Dear Judge Heaton,

I am writing this letter on behalf of Teresa Therrien, my daughter in law. Teresa is the daughter any father would be proud of. She is the loving mother of four children. Teresa is a religious person with solid morals that she exercises on a daily basis.

Teresa became a licensed hair dresser approximately one year ago. She is an artist of hair styling, although taking the written exam proved to be difficult for her. (passing on the fifth try) The written word has never been a strong attribute for her. In her determination to pass this exam, providing for her family was her main motivation to obtain certification in order to have her own salon. Teresa made this dream a reality. She is always in a positive mood and makes the children her first priority. She is a devout mother and wife and has helped keep their family together through this unfortunate ordeal. When my son, Rusty, lost his job due to the circumstances surrounding these charges, she remained by his side, a trait that is rare these days.

Although, while not trying to excuse the crime in which Teresa has been convicted, I believe the fact of her lack of ability to comprehend the written word played a major role in this unfortunate situation.

In closing, I would ask the court exercise its ability to be lenient in sentencing, granting house arrest or probation, thus allowing the family to stay together.

Sincerely,

Conrad R. Therrien

20

Linda VanMeter                                          July 19, 2007
1914 W. Evergreen
Durant, OK  74701

The Honorable Joe Heaton
c/o Stephen Jones
JONES, OTJEN, DAVIS & NIXON
P. O. Box 472
Enid, OK  73702-0472

       RE:  Sentencing of Teresa Therrien

Dear Judge Heaton:

I am Teresa's aunt, her mother is my sister, therefore, I have known Teresa all of her life.

Teresa has always been a very loving and kind individual.  She is generous and caring.
Evidence of her love is shown in her children.  She is very close to all of her children,
and they obviously adore their mother.

She has a loving spirit that creates an uplifted feeling of those around her.  I can't
remember a conversation with Teresa where she didn't compliment me on something
(sincerely), causing me to feel better about myself.  She is a very gracious young lady,
always polite and mannerly.  She is very trusting, which is how she ended up in this
mess, trusting her realtor and lender.

Teresa has always put her children before all others; their happiness is of utmost
importance.  As a result, her children are loving, caring and very sweet.  It is a joy to be
around them.

Teresa will suffer terribly if separated from her children, and the affect it will have on
these kids is quite scary to me.  They are all at ages where their relationship with their
mother is of such importance; they need their mom.

Teresa is very concerned about her situation.  The stress level has caused her to loose
weight and sleep.  However, she has managed to maintain a very positive attitude, and
does whatever necessary to protect her children from the effects of this terrible ordeal.

We pray that Teresa will receive minimum sentencing, hopefully probation or home
confinement.  The affects of splitting this family would be devastating.

This letter is respectfully submitted for your review.

Sincerely,

Linda VanMeter

21

July 23, 2007

Dear Judge Heaton,

I have known Teresa Therrien since our junior year in high school sixteen years ago. Teresa came to work for my boss a number of years ago as an apprentice, while there married Rusty and started a good family.

I am concerned about her impending sentencing. Over the last years I have known Teresa to be a good mother to her four children and a hard worker outside of being a mother. I have not known Teresa to be a criminal. This situation she has put herself in is totally out of character and I am sure she will not be a repeat offender. The stress and embarrassment she is and has experienced so far, is something she never wants to have happen again.

I hope you will observe society's benefit of having her as a mother to her children and a working member of society through a probationary period of time or home confinement.

Sincerely,

Jared Wright

22

July 23, 2007

Dear Judge Heaton,

I have known Teresa Therrien since she became an apprentice at the barber shop where my husband works several years ago. During this time Teresa and I built a relationship and have continued to be friends.

I am writing you this letter with concern for the sentencing and punishment that Teresa may receive. Although I do not know all of the facts and details of the case, I would like to express to you that Teresa has always been a wonderful mother and friend; as well, a hard working productive member of our society. I believe that Teresa has the potential to make significant contributions to our society and even more importantly to her children and family. I personally feel that Teresa and her family have already been punished for the act committed. As long as I have known Teresa her character has never portrayed anyone who would commit an illegal act. I strongly feel that this was committed due to unusual circumstances and is not something that Teresa would repeat.

Although, Teresa has found her self to be in this unusual situation, I hope the court will find a way to allow Teresa to receive a minimum punishment, so she can continue to be a loving mother and productive member of our society.

Sincerely,

Shay Wright

Shay Wright

23

July 17, 2007

Nancy Bates
400 Little Chisholm Circle
Edmond, OK  73003

The Honorable Joe Heaton
c/o Stephen Jones
JONES, OTJEN, DAVIS & NIXON
P.O. Box 472
Enid, OK 73702-0472

      RE:  Sentencing of Rusty Real Therrien
           *United States vs. Rusty Therrien*, Case No. 06-CR-264-HE

Dear Judge Heaton:

I have known Rusty Therrien for eighteen years.  His mother is my best friend.

I am asking for leniency in your sentence on Rusty's behalf.

I have watched Rusty grow into the young man he is today.  He has helped my family by fixing our computers for no monetary benefit.  My husband and I are in our late 60's and my husband is blind.  We have no help with difficult and strenuous tasks.  Rusty has set up televisions and moved furniture for us, always there when we need him.  Rusty is a kind hearted young man, who works hard and helps anyone who needs help.

When Rusty married Teresa, she had three children.  Rusty stepped up without hesitation to take care of all obligations in raising a new family.  He now has a four year old daughter whom he loves very much.

I have known Rusty always to be an honest, hard working young man.  It is so out of character for him to be caught up in this terrible situation.

Rusty is a wonderful father, as I said before, the youngest is only four years old.  She will not understand where her dad has gone.

Please consider his family when you sentence Rusty.

Sincerely,

Nancy Bates

Nancy Bates

24

Mark & Kristina Beall
1805 Oak Forest
Edmond, OK. 73003
July 15, 2007

The Honorable Joe Heaton
c/o Stephen Jones
Jones, Otjen, Davis & Nixon
PO Box 472
Enid, OK. 73702-0472

      RE:     Sentencing of Rusty Therrien
                United States vs.  Rusty Therrien, Case No. 06-CR-264-HE

Dear Judge Heaton:

We initially met Rusty through our youngest child as they participated in cheerleading together. He was at all of her cheerleading events and it was obvious that he was a very involved parent and we became instant friends. Rusty is an entrepreneur at heart and seems to always be looking for that next opportunity that can bring his family and himself the success that he so strongly desires. This entrepreneurial desire may have been the catalyst for the terrible series of unfortunate events that have unfolded. The real estate bubble as it now being described seemed to fill the news and it seemed to be making instant millionaires out of ordinary individuals or so the infomercial hype led many to believe. The television was filled with programs concerning flipping houses and property ladders that seemed too good to be true but with skyrocketing property values there was a definite opportunity. Rusty took notice of this and set out to stake his fortune in the real estate business, he embarked upon a mission to find a house that was undervalued and in a good neighborhood that just needed some work that he could perform. He found that home and unfortunately he also found a realtor and mortgage broker that had a plan. I'm not sure about all of the details surrounding the transaction, but it is obvious that the professionals in the industry were instrumental in allowing the transaction to consummate. Rusty became a pawn to a commission driven industry that was largely unregulated and in a market of less than normal due diligence, the realtor and mortgage broker were able to secure the deal. Rusty was a victim of being in the wrong place at the wrong time and for trusting the real estate agent and mortgage broker as well as not reading the fine print.

I pray that you will provide leniency when determining his sentence. I understand that a jury of his peers found him guilty as charged but it is up to you provide the proper sentence. Rusty is a good person at heart and is extremely remorseful of the events that have transpired. The rehabilitation portion of this matter has already transpired and I'm positive that Rusty would never be involved in anything even remotely resembling this matter. A stay in federal prison will do irreparable harm to his family and children who need their father at a very pivotal time in their lives.

I trust that you will take all of this into consideration when you provide a fair and compassionate sentence.

Sincerely,

Mark Beall

Kristina Beall

July 12, 2007

Deborah Brunetti
1422 E. Cleveland St.
Guthrie, OK.  73044


The Honorable Joe Heaton
c/o Stephen Jones
JONES, OTJEN, DAVIS & NIXON
P.O. Box 472
Enid, OK  73702-0472

RE:  Sentencing of Rusty Real Therrien
*United States vs. Rusty Therrien*, Case No. 06-CR-264-HE

Dear Judge Heaton:

Rusty Therrien is my nephew with whom I have had the pleasure of a close family
relationship.  I am writing concerning his sentencing and punishment of the afore
mentioned case.

It has been my experience that Rusty is a kind, loving and considerate person who gives
of himself without question.  To cite an example:  My husband of 25 years passed away
two years ago.  To try to start a new life, I relocated from Massachusetts to Oklahoma,
purchasing a home that needed renovation in its entirety.  Rusty gave *all* of his free time
to renovate that home for me without monetary reimbursement.  He did this to help me
recover from my loss, because he *is* a kind and loving person.  I honestly don't know
what I would have done without him to help me through my time of sorrow and
adjustment.

Rusty is also a wonderful father of a four year old daughter, with whom he has an
extremely close and loving relationship.

This crime, in which he has been convicted, does not seem in character with the Rusty I
know, and it is my opinion that there had to have been extenuating circumstances.

During the indictment and trial process, I have watched Rusty suffer immensely.  For
instance he lost his job, making it difficult, if not impossible, to support his family. He
also suffered great embarrassment and humiliation.  His defense cost his family an
exorbitant amount of money in which he is responsible to repay, but in the meantime, has
put his family in financial deterioration.  I am sure that this is a guilt he carries with him
constantly.

I believe that the absence of Rusty, will **greatly affect** the young daughter in which he has such a close relationship.  I am concerned as to how this little girl will cope during his absence.

In view of the fact that Rusty can be a productive citizen and loving and necessary presence in his daughter's life, I implore the court to exercise its ability to grant a minimum sentence, and if possible, consider probation or house arrest.

Sincerely,

Deborah A. Brunetti

28

Dear Judge Joe Heaton,

My name is Sonja. I am a good friend of Rusty and Teresea Therrian. I wanted to participate in writing you just a quick note about my relationship with the two of them in hopes that your decision for sentencing them would be a little easier. I have been friends with them since mid-high school. Teresea and I have become really close friends. We both have teenagers and our three year old daughters are just days apart and coincidentally named Rhaeley and Caylee!

Rusty and Teresea are very family oriented. They seldom do anything with out their children. They are both great at their jobs and to each other. Teresea and I have become very close by keeping God top priority in our lives. We have taught each other a lot about friendships and what is important in life as well as having enough faith to get us through tough times. I know both of them well enough to know that they love their family more than anything and would never jeopardize their future with them knowingly. This whole ordeal has been so hard on them but through a lot of prayer and support from friends and family they are still hopeful that this will end so they can get on with their lives in the way God intended them to.

I hope and pray that the letters you receive will help you in your decision for each of their punishment as I'm sure it is not easy to do alone.

Thank your for taking the time to read this.

Sincerely,

Sonja Forth

7-22-07

Your Honor:

I cant emagine having to make a judgment such as this. Figuring out what to do with two people that love their children, work hard but then make a bad decision. Do I give them a break or do I send them to prison.

If a person is a low life and a danger to society they deserve prision. When they are people that are productive and not dangerious, then they deserve probation. That way they can continue to be productive, take care of their children and work on making better decisions. Please concider the childrens circumstanses. They need their parents.

I know that Rusty and Tereasa have people that love them and I am sure they will persiver what ever your judgment may be.

Sincerly
Dxc Suttle

Amy McCullough
1704 Creekside Ave.
Sherman, TX  75092
July 13, 2007

The Honorable Joe Heaton
c/o Stephen Jones
Jones, Otjen, Davis & Nixon
P.O. Box 472
Enid, OK  73702-0472

      RE:    Sentencing of Rusty Real Therrien
              United States vs. Rusty Therrien, Case No. 06-CR-264-HE

Dear Judge Heaton:

      I have known Rusty Therrien for 5 years.  He is married to my cousin, Teresa
Marie Therrien.  I am not fully aware of the facts or details of this case, I am writing
concerning the sentencing of this case.

      Rusty Therrien is an incredible person.  He has such a kind personality, he is
always eager to help in need.  Rusty is eager to learn new skills to further his knowledge.
Rusty provides for his family (wife, child, and step-children), he is a very hard worker
and puts pride into his work.  He has a deep love for his family and children, as they have
a deep love for him.  I was thrilled when Teresa and Rusty got married.  I knew that Rusty
loved my cousin and would be a great husband, but more importantly (to me) I knew that
he would be a great father to her children and a provider.  He has been all of these things
and so much more.  He is a very intelligent person and will be an asset to society given
the chance.

      I am aware of the conviction of the case, I hope under the circumstances of
Rusty's character and background the sentence will be minimal.  Rusty and his family
have suffered tremendously as a result of this charge and conviction.  Please consider
allowing probation or home confinement, as this would be less of an impact on his
children while still punishing him for the crime.  Rusty has been raising 4 children that
deeply love him and depend on him as a provider for their family!

      Thank you for your time.

                    Sincerely,
                    Amy L. McCullough

31

July 15, 2007

Barbara Therrien
511 E. Springer
Guthrie, OK 73044

The Honorable Joe Heaton
c/o Stephen Jones
JONES, OTJEN, DAVIS & NIXON
P.O. Box 472
Enid, OK 73702-0472

> RE:  Sentencing of Rusty Real Therrien
> *United States vs. Rusty Therrien*, Case No. 06-CR-264-HE

Dear Judge Heaton:

Rusty is my son.  I am writing regarding the sentencing and punishment of this case.

Rusty, my first born, is a good-hearted and sensitive man.  To me, he is still just a boy, my child.  This crime that he has been convicted of his not in character for him.  I say this because I feel I know him better than anyone.  He doesn't have a criminal bone in his body.

When I look into his eyes, I see he has such pain and sorrow, all the while trying to be strong on the outside for the sake of his family and friends.  Who can sense a child's pain and sorrow more than his mother?

Rusty and Teresa have a very good marriage and love each other and their four year old daughter, Rhaeley very much.  It is always like a breath of fresh air to see all of them together.

If Rusty and Teresa are incarcerated, my husband and I will have the task of raising our granddaughter.  It frightens me because I feel she will not cope well with the absence of either parent. This child is a very loving and sensitive little girl who always has a smile on her little face.  This family is inseparable.  Although she is too young to understand the circumstances, I pray everyday with all my heart that I can find the strength to help her endure.

I love Rusty as only a mother can and I believe he has suffered severely by the loss of his job, his dignity, and worst of all the fear of being separated from his wife and child.

32

Our family has a very close relationship and we are all suffering greatly.  It feels like a death has occurred.  I am Rusty's mother; my heart is in your hands.  I believe in my son and I am begging you to allow him to continue to be the husband, father and son that he is by granting leniency in this sentencing and possible house arrest or probation.


Sincerely,

Barbara A. Therrien

33

July 20, 2007

Conrad R. Therrien
511 E. Springer
Guthrie, OK 73044

The Honorable Joe Heaton
c/o Stephen Jones
JONES, OTJEN, DAVIS, & NIXON
P.O. Box 472
Enid, OK 73702-0472

   RE:  Sentencing of Rusty Real Therrien
     *United States vs. Rusty Therrien*, Case No. 06-CR-264-HE

Dear Judge Heaton,

I am Rusty Therrien's father.  I am writing this letter as a testimonial to my son's character.  Since his birth, Rusty and I have shared a bond far beyond that of a father and son.  Rusty has a quiet demeanor with solid family and work ethics.  While working side by side with me in my business, he has successfully tackled many formidable endeavors, in which others would quickly shy away from.  His work ethics are immeasurable, always gaining the respect of his coworkers and employers.
Rusty and his wife, Teresa, have a marriage based on a close family bond.  Rusty entered this marriage five years ago, completely and lovingly accepting Teresa's three children as his own.

The crime, in which Rusty was convicted, does not fall in line with his morals and values.

Rusty has already suffered tremendous punishment during this ordeal.  He has lost his job combined with humiliation in the eyes of his peers and his community.  In addition, if he is incarcerated, he will be separated from his four year old daughter, who is the absolute center of his world.  To separate this family would be a travesty.  The mental anguish he has endured has enlightened him and made him more cautious in the trusting of professional advice and in his decision making.  In my opinion, the likelihood of a re-offense is nil.

In lieu of his conviction, Rusty has the ability to remain an extremely productive citizen, and a loving father and husband.  In light of this, please consider leniency in his sentencing, and the consideration of probation or house arrest.

Sincerely,

*Conrad R. Therrien*

Conrad R. Therrien

34

Linda VanMeter
1914 W. Evergreen
Durant, OK   74701

The Honorable Joe Heaton
c/o Stephen Jones
JONES, OTJEN, DAVIS & NIXON
P.O. Box 472
Enid, OK  73702-0472

    RE:  Sentencing of Rusty Therrien

Dear Judge Heaton:

My name is Linda VanMeter.  Rusty Therrien is married to my niece, Teresa, and I am
proud to call him my nephew.

We were so happy when Rusty joined our family.  He is a very likeable, kind, and an
extremely nice young man.  He and Teresa have together four lovely children, a beautiful
family.

Rusty is a loving, kind and gentle natured father.  He treats the kids with patience,
generosity, and love.  His loving guidance is inspiring.

If Rusty is separated from his family it will be an extreme hardship on him, his wife, and
his children.  They need his loving support.  Please consider how difficult this separation
will be on all of them, especially the kids.  Rusty is very deserving of a second chance,
please consider home confinement or house arrest sentencing.

This letter is respectfully submitted for your consideration.

Sincerely,

Linda VanMeter

35

July 23, 2007

Dear Judge Heaton,

I have known Rusty Therrien for sixteen years since our junior year in high school, and we have been roommates in the past for about eight years.

I am writing to you in regard to his sentencing. Rusty has always been a hard worker. He started as a newspaper carrier early in high school. Because of his hard work and saving he bought his first and second cars in high school without help from his parents. He has worked for Jetta Products making hot tubs and countertops starting off at ground level moving his way up to the youngest salesperson in the company. He has also been a directional driller and the owner of a computer repair business, but more than all of that he has been a great father and a good friend.

This situation he has put himself in is uncharacteristic of the man I've known and I am sure is not the beginning of a pattern. I hope you will consider this when deciding whether it will benefit society to have him soak up tax payer's money in prison for a lengthy time, or have him contributing to society, paying taxes and being a father to his children.

Sincerely,

Jared Wright

Jared Wright

36

19 July 2007

JUDGE JOE HEATON

SIR:

REGARDING RUSTY THERRIEN, DUE FOR SENTENCING IN YOUR COURT, I HAVE A SHORT STATEMENT.

I FIRST MET RUSTY DURING THE 1990-1991 TIME PERIOD, WHEN HE AND MY SON, JARED WRIGHT, BECAME FRIENDS. AT THAT TIME RUSTY WAS A FATHER WHO CARED GREATLY FOR HIS DAUGHTER. HE MAINTAINED A CLOSE RELATIONSHIP WITH HER AND WAS CONSISTANT WITH HIS CHILD SUPPORT PAYMENTS. I FOUND THIS VERY COMMENDABLE.

ALSO DURING THIS PERIOD, RUSTY WAS EMPLOYED BY JETTA, WHERE HE HELD A POSITION OF AUTHORITY AND RESPONSIBILITY AT A VERY YOUNG AGE. I ALSO FOUND THIS MATURE AND COMMENDABLE. AT NO TIME WAS I CONCERNED ABOUT MY SONS' WELFARE OR HEALTH WHILE THEY WERE ROOMMATES.

ON A MORE PERSONAL LEVEL, RUSTY WAS ALWAYS QUIET AND COURTEOUS TO MY

PAGE 2

HUSBAND AND ME. TO THE EXTENT THAT HE HELPED US GET A TUB THAT HE MADE AT WORK. THIS WAS GREATLY APPRECIATED.

IN THE PAST SEVEN TO EIGHT YEARS WE HAVEN'T BEEN AROUND RUSTY TO KNOW WHAT HE HAS BEEN DOING. WE HAVE KEPT UP WITH HIS PERSONAL LIFE THROUGH OUR SON. I WAS GREATLY DISTRESSED TO HEAR HIS LIFE HAD TAKEN THIS TURN.

SINCERELY,

PHYLIS JEAN WRIGHT
2000 EDGEWOOD DR.
EDMOND, OK 73013

38

July 23, 2007

Dear Judge Heaton,

      I have known Rusty Therrien for eight years. I know him because Rusty and my husband have been friends since I began dating my husband. During the eight years that I have known Rusty, he and I have built a friendship of our own.

      I am writing you this letter with concern for the sentencing and punishment that Rusty may receive. Although, I am not aware of all of the facts or details concerning this sentencing and punishment, I do know that Rusty has always been a hard working, productive member of our society, as well, he has been a great father and wonderful friend. Rusty has always been a loving and sympathetic person. I personally know this having been a close friend of his for many years.

      Although Rusty has found himself to be in an unusual situation this has not been a typical or even a usual behavior that I would have ever expected him to portray. Rusty and his family have suffered a great deal as a result of this up coming punishment. Please consider this when choosing his sentencing.

        Sincerely,

        Shay Wright

39